# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT GREENEVILLE

| | |
|---|---|
| TRACY LYNN MARZIANI, | ) |
| Petitioner, | ) |
| | ) Nos.: 2:13-cr-91; 2:16-cv-44 |
| v. | ) |
| | ) Judge R. Leon Jordan |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

## MEMORANDUM OPINION

Petitioner Tracy Lynn Marziani ("Petitioner"), a federal prisoner, timely filed a pro se motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255 (the "2255 Motion") [Doc. 151],[1] and the government has responded [Doc. 160]. Petitioner pleaded guilty to one count of conspiring to transport minors in interstate commerce for purposes of prostitution in violation of 18 U.S.C. § 2423(a). Petitioner asserts her counsel was ineffective in violation of the Sixth Amendment of the United States Constitution for failing to fully explain her plea agreement and for failing to adequately represent her at the sentencing phase. For reasons that follow, the Court finds an evidentiary hearing on the 2255 Motion is not necessary, and the 2255 Motion shall be **DENIED**.

**I.   STANDARDS**

    **A.   Threshold Standard**

Under 28 U.S.C. § 2255(a), a federal prisoner may make a motion to vacate, set aside, or correct her judgment of conviction and sentence, if she claims that the sentence was imposed in

---

[1] All citations to the district court record are to the docket of Case No. 2:13-cr-91, which is the underlying criminal case.

1

violation of the Constitution or laws of the United States; that the court lacked jurisdiction to impose the sentence; or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief under § 2255, a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A petitioner bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts requires a district court to summarily dismiss a § 2255 motion if "it plainly appears from the face of the motion, the attached exhibits, and the record of the prior proceedings that the movant is not entitled to relief." *See also Pettigrew v. United States*, 480 F.2d 681, 684 (6th Cir. 1973) ("A motion to vacate sentence under § 2255 can be denied for the reason that it states 'only bald legal conclusions with no supporting factual allegations.'") (quoting *Sanders v. United States*, 373 U.S. 1, 19 (1963)). If the motion is not summarily dismissed under Rule 4(b), Rule 8 requires the court to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir.

2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine*, 488 F.3d at 333 (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)).

      **B.**      **Standard for Ineffective Assistance of Counsel**

Petitioner raises several issues premised upon an "ineffective assistance of counsel" argument. Ineffective assistance of counsel is a recognized constitutional violation that, when adequately shown, warrants relief under § 2255. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), governs claims of ineffective assistance of counsel raised pursuant to 28 U.S.C. § 2255. *Huff,* 734 F.3d at 606. According to *Strickland*, to demonstrate a violation of the Sixth Amendment right to effective assistance of counsel, "a defendant must establish that his attorney's performance was deficient and that the deficient performance prejudiced the defense." *Id.* (citing *Strickland*, 466 U.S. at 687).

The first prong requires a petitioner to show his attorney's performance was deficient by demonstrating that counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Stated another way, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. The Supreme Court "has declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Huff*, 734 F.3d at 606 (alterations in original) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). A reviewing court must be "highly deferential" to counsel's performance, because

> [a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to

> reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Even if a petitioner is successful in overcoming that presumption, he must still satisfy the second prong of the *Strickland* test, *i.e.*, prejudice. Thus, a petitioner must show not only that his counsel's representation was objectively unreasonable, but also that he was prejudiced by counsel's deficiency because there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McPhearson v. United States*, 675 F.3d 553, 563 (6th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694).

Although the *Strickland* Court emphasized that both prongs must be established in order for the petitioner to meet his burden, it held there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry. *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Facts

In the early hours of June 22, 2013, police officers were dispatched to the Motel 6 in Johnson City, Tennessee, in response to a complaint that prostitutes were present and interacting with motel customers [Doc. 41, Plea Agreement ¶¶ 4(d) and (h); Doc. 121, Final Presentence Investigation Report ("PSR") ¶ 20]. Upon arrival at the motel, the police officers located, in Room

236, two girls—ages 14 and 17, four men and Petitioner [PSR ¶ 20-21]. The two girls reported that Petitioner brought them to the motel, and Petitioner was thereafter arrested for contributing to the delinquency of a minor [*Id.* ¶¶ 20-21, 56]. Four days earlier, on June 18, 2013, co-defendant Mellisa Roper had met with construction workers at the motel and promised to bring them some girls on Friday, June 21, 2013, so the construction workers and the girls could "party" [Doc. 41, Plea Agreement ¶ 4(c)]. Petitioner arranged for two girls—whom she knew were under the age of 18—to travel with her from Bristol, Virginia, to Johnson City, Tennessee, to engage in prostitution with the construction workers [*Id.* ¶ 4(d)]. On June 21, 2013, Petitioner and co-defendant Jerry Johnson picked up the two girls and drove them from Bristol, Virginia, to Johnson City, Tennessee, where they met with Roper and then took the girls to the Motel 6 [*Id.* ¶¶ 4(d)-(e)]. During the drive, Petitioner told the girls that Johnson was a pimp, and she instructed them about prostitution and rates to charge for different sex acts [*Id.* ¶ 4(e)]. Petitioner introduced the two underage girls to the male construction workers and remained with them while the construction workers provided alcohol and marijuana to them [*Id.* ¶ 4(g)]. Petitioner arranged for one of the girls to perform oral sex on one of the construction workers, who paid $100 for that sexual act, and the Petitioner received part of the $100 [*Id.*].

  B.    **Procedural History**

On October 8, 2013, a federal grand jury charged Petitioner, Johnson, and Roper with conspiring to transport minors in interstate commerce for prostitution, in violation of 18 U.S.C. § 2423(a) and (e); inducing interstate travel for prostitution, in violation of 18 U.S.C. § 2422(a); and transporting individuals in interstate commerce for prostitution, in violation of 18 U.S.C. 2421 [Doc. 3, Indictment]. The Court thereafter ordered Petitioner committed for a mental examination. [Doc. 28, Order of Commitment; *see also* 11/20/2013 Minute Entry]. On March 17, 2014, based

upon the forensic evaluation, the Court found Petitioner mentally competent to stand trial, and entered a new scheduling order [Doc. 38, Order; Doc. 39, Scheduling Order].

Five days later, on March 22, 2014, Petitioner signed a written plea agreement in which she agreed to plead guilty to Count One of the indictment, *i.e.*, conspiracy to transport minors in interstate commerce for purposes of prostitution [Doc. 41, Plea Agreement]. Petitioner admitted that she had conspired with Johnson and Roper to transport two minors in interstate commerce from Bristol, Virginia, to Johnson City, Tennessee, for the purpose of having the two minors engage in prostitution in violation of 18 U.S.C. § 2423(a) [*Id.* ¶¶ 1(a), 4(i)]. Petitioner further admitted she had read the indictment, had discussed the charges and possible defenses with defense counsel, that she understood the crimes charged, and that she was pleading guilty because she was, in fact, guilty [*Id.* ¶ 3]. Petitioner agreed that the statutorily authorized punishment for her offense ranged from ten years to life imprisonment, followed by five years to life on supervised release [*Id.* ¶ 1(a)]. Petitioner further agreed that she understood that the Court had discretion to impose any lawful term of imprisonment, any lawful fine, and any lawful term of supervised release up to the statutory maximum [*Id.* ¶ 6(a)]. She waived her right to appeal or to seek § 2255 relief, except in limited circumstances [*Id*. ¶ 10].

Petitioner pleaded guilty on April 3, 2014 [ Doc. 155, Plea Tr.]. After being advised that she was under oath, Petitioner admitted that she had ample opportunity to discuss the charges against her with her attorney, that her attorney was fully aware of all the facts on which the charges were based, and that her attorney had advised her as to any defense she may have to the charges [*Id*. at 4-5]. Petitioner was advised of the constitutional rights she would be giving up by pleading guilty and she swore that she understood [*Id.* at 6-7]. The Court asked Petitioner if anyone had "put any pressure on you either mental or physical to force you to plead guilty" or if the government

6

had promised or suggested a lighter sentence if she pleaded guilty [*Id*. at 7]. Petitioner responded, "no" [*Id*.]. The prosecutor stated the factual basis for the government's case against Petitioner and the elements of the offense to which she was pleading guilty [*Id.* at 8-9]. Petitioner stated under oath that she "agree[d] with the government's summary of what she did" and that she was offering to plead guilty because she was, in fact, guilty [*Id.* at 10]. The government then advised Petitioner that she was subject to a statutory mandatory minimum term of imprisonment of no less than 10 years and a maximum term of up to life, as well as a term of supervised release of no less than 5 years and up to life [*Id.* at 10]. The Court further advised Petitioner that the applicable sentencing guidelines would be considered, but that the Court could depart from the sentencing guidelines [*Id.* at 11] and that the Court could defer its decision as to whether to accept the plea agreement until after reviewing the Presentence Report ("PSR") from the Probation Office [*Id*. at 12]. The Court informed Petitioner that she would not be permitted to withdraw her plea on the basis of the sentence that she might receive and that the Court would not be able to determine her sentence until the Court had received the PSR [*Id*. at 12-13]. Petitioner swore she understood the terms of her plea agreement, that her sentence was yet unknown and would be determined by the Court, and that she was waiving her rights to direct appeal and collateral review, except in limited circumstances [*Id*. at 12-14]. When the Court asked Petitioner if she had any questions, she stated she did not [*Id.* at 14]. Subsequently, pursuant to a Plea Agreement Supplement [Doc. 42], Petitioner testified for the government at co-defendant Roper's trial in August 2014.

The first PSR prepared on June 17, 2014, calculated Petitioner's criminal history to be a category III. Her total offense level was calculated as 36 [*Id.* ¶¶ 50-52]. Petitioner's guidelines range was 235 to 293 months' imprisonment [Doc. 63, 6/17/2014 PSR ¶¶ 80-81, (also reiterating that Petitioner faced a statutory mandatory minimum of 10 years' imprisonment)]. Petitioner's

statutory and guideline requirement for supervised release was five years to life [*Id.* ¶¶ 84-85]. Petitioner's counsel filed numerous objections to the PSR [Docs. 85, 112, 123, Notices of Objections]. Due in no small part to Petitioner's counsel's efforts, the final PSR calculated Petitioner's offense level to be 31 with an advisory guideline range of 135 to 168 months imprisonment [Doc. 121, 11/14/2014 PSR ¶¶ 42-44, 72-73]. The government then filed a sealed motion seeking a downward departure below the 120-month statutory minimum sentence [Doc. 113, Motion for Downward Departure; Doc. 118, Memorandum in Support; *see also* Doc. 116, Sentencing Memorandum]. The United States recommended a term of imprisonment between 87 and 108 months, followed by a 10-year term of supervised release. [*Id.*]. Petitioner's counsel requested a further downward departure [Doc. 141, Motion; Doc. 144, Sentencing Memorandum]. On March 12, 2015, the Court sentenced Petitioner to 72 months' imprisonment and 10 years' supervised release [Doc. 148, Judgment]. Petitioner did not appeal but instead filed a timely § 2255 motion.

### III. DISCUSSION

Petitioner asserts her counsel was ineffective in violation of the Sixth Amendment because: (1) counsel failed to fully explain her guilty plea to her and "threatened [Petitioner] with life if [sic] plea was not signed," thereby rendering her guilty plea involuntary; (2) counsel "allowed ten year probation term without argument" and lacked experience; and (3) counsel "allowed false hearsay of witnesses to be admitted" [Doc. 151, 2255 Motion at 4]. Petitioner asks for "immediate and unconditional release" [Id. at 13].

### A. Counsel Failed to Fully Explain the Plea Agreement and "Threatened Movant with Life."

The allegations in Petitioner's 2255 Motion are sparse. Her 2255 motion states without elaboration that "[c]ounsel failed to communicate, failed to fully explain plea so it would be

8

voluntary, [and] threatened movant with life if plea was not signed. . . ." [*Id*.].

[A] habeas petitioner faces a heavy burden in collaterally attacking a guilty plea based on allegations contrary to oral responses given in open court during a Rule 11 colloquy." *Garnica v. United States*, 361 F. Supp.2d 724, 733 (E.D. Tenn. 2005) (citing *Warner v. United States*, 975 F.2d 1207, 1212 (6th Cir. 1992) and *United States v. Standiford*, 148 F.3d 864, 868 (7th Cir. 1998)). In *Blackledge v. Allison,* the Supreme Court explained the importance and weight of representations made during the plea hearing, stating:

> [t]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge*, 431 U.S. 63, 73-74 (1977). Absent clear and convincing evidence to the contrary, a defendant is bound by his or her plea agreement and representations made under oath during a plea colloquy. *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) ("where the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry") (internal punctuation and citations omitted); *see also United States v. Brenner*, 726 F. App'x 433, 438 (6th Cir. 2018) (same).

Petitioner does not enlighten the Court as to the information she was allegedly not given that would have changed her decision to plead guilty. However, the transcript from the Change of Plea hearing demonstrates that Petitioner was provided the information required under Fed. R. Crim. P. 11, and that it was sufficient for Petitioner to make a decision regarding her plea. Further, she acknowledged that she understood the information provided to her, and that she still wanted to plead guilty. The Court found that her plea was knowing and voluntary [Doc. 155, Plea Tr. at 14]. The Court concludes that Plaintiff has not made a viable claim that her counsel's performance

9

was deficient in regard to Plaintiff's guilty plea, and, further, even if she could show a deficiency, Petitioner can show no prejudice.

Petitioner also claims that her guilty plea was involuntary because her counsel "threatened her with life" if she did not plead guilty. The Court understands this allegation to mean that her counsel told her she faced a maximum sentence of life imprisonment if she chose to take her case to trial rather than pleading guilty. Counsel communicated accurate information to Petitioner—she was in fact facing a maximum sentence of life imprisonment—and cannot be found ineffective for having provided such information to her.

Petitioner has come forward with no basis for the Court to conclude her counsel's representation was deficient with respect to her guilty plea. Nor can she show, if her counsel's performance were deficient, that she was prejudiced by it. Petitioner testified at the Change of Plea hearing that her plea was knowing and voluntary. For the reasons previously discussed, the Court finds Petitioner is bound by that testimony and, consequently, by her guilty plea.

### B. Counsel "Allowed Ten Year Probation Term Without Argument" and Lacked Experience.

Petitioner asserts her counsel was ineffective because she "allowed" a ten-year term of supervised release and her counsel lacked experience. Counsel did not "allow" a ten-year term of supervised release. Rather, this term of supervised release was determined by the Court. Further, the record reflects that Petitioner's counsel represented her vigorously during the sentencing phase—filing no fewer than three objections to the PSR and revised PSR [Notice of Objections, Docs. 85, 112, 123], as well as a lengthy Sentencing Memorandum [Doc. 144]. Petitioner's counsel successfully challenged the first PSR's initial guidelines range of 235 to 293 months' imprisonment and eventually secured a sentence of 72 months' imprisonment and ten years' supervised release for Petitioner. Further, the Court advised Petitioner—and she acknowledged and accepted during

the Change of Plea hearing—that she faced a term of supervised release of five years up to life [Doc. 155, Plea Tr. at 10]. Petitioner further stated that she understood the government had not made an agreement to recommend a particular sentence and the Court would determine her sentence [*Id*. at 12]. The Court can find no basis to conclude counsel's performance fell below an objective standard of reasonableness simply because Petitioner received ten years of supervised release or because counsel allegedly lacked experience. This claim simply lacks merit.

### C. Counsel "Allowed False Hearsay of Witnesses to be Admitted."

Petitioner asserts her counsel was ineffective because she "allowed false hearsay evidence of witnesses to be admitted." Petitioner has not identified the witnesses, the alleged hearsay evidence, the context in which it was admitted, or the reasons why it was false. These conclusory statements do not support a viable claim that her counsel's performance was deficient and that she was prejudiced by such alleged deficient performance. This claim also lacks merit.

## IV. CONCLUSION

The Court has reviewed this 2255 Motion carefully and finds no merit in Petitioner's claims. For the reasons stated herein, the Court finds no evidentiary hearing for this motion brought pursuant to 28 U.S.C. § 2255 is necessary. The Court further concludes, on the basis of the record before it, that Petitioner is not entitled to relief. The 2255 Motion [Doc. 151] will therefore be **DENIED**.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge